UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THERON HAYTON,

                                Plaintiff,

                                                                             Case # 18-CV-6130-FPG

v.

                                                                             DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

      Plaintiff Theron Hayton brings this action pursuant to the Social Security Act seeking review of the denial of his disability insurance benefits ("DIB") and supplemental security income ("SSI") applications. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

      Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 14, 19. For the reasons that follow, Hayton's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

      In October 2014, Hayton protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr. 161-63.[1] He alleged that he had been disabled since October 1, 2014 due to degenerative arthritis, nerve damage, and chronic pain in the back and hip, sleep apnea, and morbid obesity. Tr. 188. On March 16, 2017, Hayton and a vocational expert ("VE") testified at a hearing before Administrative Law Judge Asad M. Ba-Yunus ("the ALJ"). Tr. 33-66. On July 17, 2017, the ALJ issued a decision finding that Hayton was not disabled within the meaning

---

[1] References to "Tr." are to the administrative record in this matter.

of the Act from October 1, 2014 through September 17, 2016, but that on September 18, 2016[2], when Hayton turned 55, he became disabled. Tr. 16-24. On December 22, 2017, the Appeals Council denied Hayton's request for review. Tr. 1-6. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

---

[2] Hayton actually turned 55 years old (changing age category from "closely approaching advanced age" to "advanced age") on September 19, 2016, not September 18.

2

restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ analyzed Hayton's claim for benefits under the process described above.

At step one, the ALJ found that Hayton had not engaged in substantial gainful activity since the alleged onset date. Tr. 19.

At step two, the ALJ found that Hayton has the following severe impairments: degenerative, arthritic, and neurological disease of the back and bilateral knees following multiple surgical repairs, and morbid obesity. *Id.* At step three, the ALJ found that Hayton's impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. *Id.*

Next, the ALJ determined that Hayton retained the RFC to perform the full range of light work, including the ability to sit, stand, and walk for six hours each in an eight-hour workday with normal breaks and to lift and carry ten pounds frequently and twenty pounds occasionally. Tr. 19-22; *see* 20 C.F.R. §§ 404.1567(b), 416.967(b).

At step four, the ALJ found that Hayton could not perform his past relevant work as a power equipment service manager and small engine mechanic, a skilled position requiring a medium exertional capacity. Tr. 22. At step five, the ALJ found that before September 18, 2016, Hayton could have performed other jobs that existed in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 23. Accordingly, the ALJ determined that Hayton was not disabled between October 1, 2014 and September 18, 2016. *Id.*

**II. Analysis**

Hayton argues that the ALJ erred at step three when he failed to adequately explain why his impairments did not meet or medically equal Listing 1.04: Disorders of the Spine.[3] ECF No. 14-1 at 16-27. The Court agrees.

At step three of the disability analysis, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a Listings impairment. 20 C.F.R. §§ 404.1520(d),

---

[3] Hayton advances other arguments that he believes require reversal of the Commissioner's decision. ECF No. 14-1 at 27-31. The Court will not reach these arguments because it remands based on the improper step three determination.

4

416.920(d). To match an impairment in the Listings, the claimant's impairment "must meet all of the specified medical criteria" of a listing. *Barber v. Comm'r of Soc. Sec.*, 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *3 (N.D.N.Y. July 22, 2016) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." *Id.* (citation omitted). Additionally, a "claimant must show that he meets all the requirements of the listing consistently." *Beach v. Commissioner*, No. 7:13-cv-323 (GLS), 2014 WL 859167, at *3 (N.D.N.Y. Mar. 5, 2014). "Sporadic findings that some of a listing's requirements are intermittently met (but never all) are not sufficient" to match a listing. *Alington v. Colvin*, No. 15-CV-6247L, 2017 WL 1370998, at *3 (W.D.N.Y. Apr. 17, 2017).

An ALJ must explain why a claimant failed to meet or equal the Listings "[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (citation omitted). Importantly, it is the ALJ's responsibility—and not the job of the Commissioner's attorney—to "build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012). The Court "cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Id.* "Nevertheless, an ALJ's unexplained conclusion at step three of the analysis may be upheld where other portions of the decision and other clearly credible evidence demonstrate that the conclusion is supported by substantial evidence." *Yeomas v. Colvin*, No. 13-CV-6276P, 2015 WL 1021796, at *17 (W.D.N.Y. Mar. 10, 2015) (citation, quotation marks, and

alterations omitted); *see also Berry v. Schweiker*, 675 F.2d 464, 468-69 (2d Cir. 1982) (affirming the ALJ's step three decision even though he did not set forth a specific rationale "since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence").

Here, the ALJ found at step three that Hayton did not have an impairment or combination of impairments that met or medically equaled the severity of a Listings impairment. Tr. 19. In making this finding, the ALJ merely summarized Listing 1.04's requirements and stated that "none of the medical records establishes findings or symptoms severe enough to qualify under Listing 1.04." *Id.* For the reasons that follow, the ALJ's finding that Hayton failed to meet Listing 1.04 is inadequate in light of the evidence supporting Hayton's contention that he meets the requirements. *See Blais v. Astrue*, No. 08-CV-01223 (DNH), 2010 WL 2400177, at *4 (N.D.N.Y. May 13, 2010) (finding that the ALJ erred when he failed to explain why the plaintiff did not meet Listing 1.04A even though there was evidence in the record that he did).

> Listing 1.04A: Disorders of the Spine provides, in relevant part:
>
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in a compromise of a nerve root (including cauda equine) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Thus, to establish that he meets the Listing, Hayton must demonstrate that he suffers from nerve root compression and each of the four characteristics set forth in the Listing during the relevant time period. *See Ramirez Morales v. Berryhill,* No. 6:17-CV-06836-MAT, 2019 WL 1076088, at

*4 (W.D.N.Y. Mar. 7, 2019) (holding that "the claimant must also demonstrate that all five criteria were met simultaneously and for the necessary duration").

In his motion, Hayton cites medical findings that correspond to each of Listing 1.04's requirements. ECF No. 14-1 at 20-21. The Commissioner responds that Hayton's citations are insufficient because they do not demonstrate that Hayton experienced all of the required symptoms simultaneously and during the relevant time period. ECF No. 19-1 at 17-18. For example, the Commissioner points out that some of the diagnostic evidence Hayton cites are from examinations that occurred before the alleged onset date, and that while Hayton had positive straight-leg raising tests during a 2015 examination with the consultative examiner, Dr. Hongbiao Liu, M.D., he had previously tested negative for straight-leg raising in 2014. *Id.* at 19.

However, as noted above, it is the ALJ's job—not the Commissioner's attorney's—to "build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review." *Hamedallah,* 876 F. Supp. 2d at 142. Here, the ALJ did not provide the explanation that the Commissioner now offers; he merely stated that "none of the medical records establishes findings or symptoms severe enough to qualify under listing 1.04." ECF No. 6 at 19. The record belies this conclusory statement; Hayton has displayed numerous symptoms that appear to meet each of Listing 1.04's requirements.

For example, in 2015, during the relevant time period, Dr. Liu found that Hayton had positive straight-leg raising tests in both the supine and sitting positions. Tr. 663; *see Ramirez Morales*, 2019 WL 1076088, at *4 (noting that Listing 1.04 is not satisfied unless there is evidence of positive straight-leg raising tests in both the sitting and supine positions). He also found that Hayton could not perform heel and toe walking and could only squat at five percent, evidencing limitations of spinal motion. Tr. 290. Additionally, in 2016, also during the relevant time period,

7

a treating physician, Margaret Mitchell, M.D., noted pain radiating into Hayton's left buttock, abnormal heel and toe walking, decreased muscle tone and spasms, and diminished reflexes. Tr. 506, 510, 514, 519, 523, 528, 533. To the extent that other requirements of Listings 1.04 were found during earlier examinations, and that not every examination noted evidence of every requirement, the record is ambiguous, because it is not clear whether Hayton's symptoms waxed and waned, or whether they simply were not addressed during each examination. *See Monsoori v. Comm'r of Soc. Sec.*, No. 1:17-CV-01161-MAT, 2019 WL 2361486, at *6 (W.D.N.Y. June 4, 2019) (remanding where plaintiff made "colorable case" that he met Listing 1.04 and the record was ambiguous as to the results of the straight-leg raise test; also noting that a consultative exam should determine whether all the requirements of Listing 1.04 were met simultaneously).

The Court cannot determine from the ALJ's conclusory step three explanation whether he found that Hayton's symptoms were too sporadic and inconsistent, as the Commissioner now argues, or whether there was some other reason that Hayton's symptoms did not meet Listing 1.04. This frustrates the Court's ability to undertake a meaningful review of his decision. *See Hamedallah*, 876 F. Supp. 2d at 142; *Booker v. Astrue*, No. 07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug. 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court."). Accordingly, the Court finds that remand is required.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 19) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this

opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000).  The Clerk of Court is directed to enter judgment and close this case.

    IT IS SO ORDERED.

Dated: June 12, 2019
       Rochester, New York

                                               HON. FRANK P. GERACI, JR.
                                               Chief Judge
                                             United States District Court